IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL D. BROOK,<br><br>　　Plaintiff,<br><br>v.<br><br>STERLING TESTING SYSTEMS, INC.<br>a/k/a STERLING INFOSYSTEMS, INC.<br>and GAYLORD ENTERTAINMENT,<br><br>　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

)　3:12-cv-01168
)　Judge Nixon
)　Magistrate Judge Griffin

)　JURY DEMAND

## ORDER

Pending before the Court are Defendant Sterling Testing Systems, Inc.'s Motion to

Dismiss ("Motion") (Doc. No. 6), joined by Defendant Gaylord Entertainment (Doc. No. 20),

and Plaintiff Michael D. Brook's Motion to Consolidate (Doc. No. 22). For the reasons stated

below, the Court **GRANTS** the Motion to Dismiss in part and **DENIES** it in part; and **GRANTS**

the Motion to Consolidate.

## I.　BACKGROUND

Plaintiff Michael D. Brook worked for Opryland Hospitality, LLC ("Opryland")—

improperly identified as Gaylord Entertainment in the Complaint—in its food services division.

(Doc. Nos. 1 ¶ 18; 20 at 1 n.1.) At some point during his employment, Opryland hired Sterling

Testing Systems, Inc. ("Sterling") to perform a background check on Brook. (Doc. No. 1 ¶ 20.)

Sterling then falsely reported to Opryland that Brook "was a felon of heinous crimes," and,

despite his protestations, Opryland fired Brook. (*Id.* ¶¶ 22, 24–25.)

On November 14, 2011, Brook filed the first suit arising from his dismissal against

Sterling in the Circuit Court of Tennessee in Davidson County, and Sterling removed the case

1

("*Brook I*") to federal court the following month. (No. 3:11-cv-01190, Doc. Nos. 1, 1-1.) In his *Brook I* complaint, Brook alleged state law claims for false light, libel, outrageous conduct, and negligence. (No. 3:11-cv-01190, Doc. No. 1-1.)

The magistrate judge in *Brook I* entered a case management order on March 8, 2012, setting an August 1, 2012, deadline to amend pleadings or join parties. (No. 3:11-cv-01190, Doc. No. 11 at 4.) On July 31, 2012, Sterling moved to amend its answer to add two defenses under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* (No. 3:11-cv-01190, Doc. 18-1 at 8.) The magistrate granted the motion to amend the answer on August 14, 2012. (No. 3:11-cv-01190, Doc. No. 19.)

On November 9, 2012, Brook filed the Complaint in this action ("*Brook II*"). (Doc. No. 1.) The parties agree the underlying facts in *Brook II* are the same as in *Brook I*. (Doc. Nos. 7 at 2, 8; 21 at 7; 23 at 1.) However, in his *Brook II* complaint, Brook brings claims under the FCRA against Sterling and Opryland. (Doc. No. 1 ¶¶ 32–53.)

On December 19, 2012, Sterling filed its Motion to Dismiss in *Brook II* (Doc. No. 6) that Opryland later joined (Doc. No. 20).

On December 28, 2012, Brook filed a Motion for Leave to Amend his initial complaint in *Brook I*. (No. 3:11-cv-01190, Doc. No. 24.) Brook then filed both a Response to the Motion to Dismiss (Doc. No. 21) and a Motion to Consolidate the cases (Doc. No. 22) on January 23, 2013. On February 8, 2012, Sterling filed a Response to the Motion to Consolidate (Doc. No. 27) that effectively also included its reply to Brook's Response to the Motion to Dismiss. Opryland joined Sterling's Response. (Doc. No. 28.)

In sum, pending now are the Motion to Dismiss and the Motion to Consolidate in *Brook II*, and the Motion to Amend in *Brook I*. For the sake of judicial efficiency, the Court has

2

determined it will address the Motion to Dismiss and the Motion to Consolidate by this Order, and allow Magistrate Judge Griffin to address the Motion to Amend in *Brook I*, following the issuance of this Order.

## II.    MOTION TO DISMISS

Sterling argues in its Motion to Dismiss that Brook filed *Brook II* as "an end run around the Court's" deadlines and that, because Brook's suit is duplicative of *Brook I*, the Court should dismiss the second suit in its entirety against both Defendants. (Doc. No. 7.)

"As between federal district courts, . . . though no precise rule has evolved, the general principle is to avoid duplicative litigation." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (citations omitted). In other words, "a plaintiff must join all claims arising from the same set of facts in a single proceeding and cannot split them across multiple fora." *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 479 (6th Cir. 2004) (citing Restatement (Second) of Judgments § 24 (1982)).

"Faced with a duplicative suit, the federal court may exercise its discretion to stay or dismiss the suit before it, allow both federal cases to proceed, or enjoin the parties from proceeding in the other suit." *Twaddle v. Diem*, 200 F. App'x 435, 438 (6th Cir. 2006) (citing *Smith v. SEC*, 129 F.3d 356, 361 (6th Cir. 1997)). "'[S]imple dismissal of the second suit is [a] common disposition because plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time.'" *Id.* (quoting *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138–39 (2d Cir. 2000)).

Here, both parties agree that *Brook II* arises out of the same facts—Sterling's faulty background check that led to Brook's termination—as Brook's first suit. Both suits name

3

Sterling as a defendant. The only differences between the two cases are the FCRA claims in *Brook II* and the addition of Opryland as a defendant.

For his part, Brook concedes that he could have raised the FCRA claims earlier in *Brook I*. (Doc. No. 21 at 8.) His explanation for the delay boils down to claims of ignorance and gamesmanship. He asserts that the FCRA and its applicability to background checks are "foreign" to most lawyers, including Brook's counsel in *Brook I*. (*Id.* at 4–5.) Sterling, he states, knew of the law's applicability and strategically exploited Brook's ignorance by waiting until the last minute to amend its pleadings. (*Id.* at 5.)

Brook also concedes that he could have asked to amend his complaint in *Brook I* after Sterling moved to amend its answer, but argues this could have led to a delay past the statute of limitations on the FCRA claims. (*Id.* at 5–6.) Brook states that, at an unspecified date, he "began to wonder whether he should have raised claims under the FCRA" and decided to consult other attorneys. (*Id.* at 3.) On October 30, 2012, Brook contacted his current counsel in *Brook II*. (*Id.*) Because the statute of limitations on any FCRA claim would lapse on November 17, 2012, Brook's new counsel chose to file a separate claim rather than risk excess delay in the time to amend the original complaint in *Brook I*. (*Id.* at 4.)

Finally, Brook argues that Sterling will not suffer prejudice from allowing the *Brook II* FCRA claims to proceed because doing so amounts to "nothing more" than replacing state claims with federal claims based on the same "underlying facts" and no discovery will be lost in the case. (*Id.* at 7–8.) Brook does not cite a single similar case to support his position, but argues instead that "justice and fairness" dictate the Court exercise its discretion and allow his claims to move forward. (*Id.*)

4

In response, Sterling argues that, even if Brook's counsel was ignorant to the FCRA generally, Brook had notice of a potential FCRA claim based on the November 19, 2010, letter at the heart of the suits that he received from Opryland with a copy of his rights under the FCRA. (Doc. Nos. 7 at 3–4; 27 at 3.) In addition, Sterling argues Brook's lawyer had an ethical duty to investigate potential claims and defenses. (Doc. No. 27 at 3.) As for prejudice, Sterling argues that it has "already expended significant efforts readying this case for summary judgment" and "additional discovery would almost certainly be necessary to explore compliance with the various provisions of the FCRA." (*Id.* at 2.)

Brook's appeal to justice does not fall on deaf ears. On one hand, the Court sympathizes with Brook himself, who unfortunately may have his claims undermined by his original counsel's repeated failure to recognize the relevance of the FCRA and the ticking clock on its statute of limitations. On the other hand, the Court finds that, in our adversarial system of justice, counsel's ignorance of the law and failure to investigate possible claims or defenses simply do not justify allowing an exception to the basic principle prohibiting duplicative litigation. A lawyer's mistake is not enough to ask the Court for a whole-cloth "do over" by instigating a second round of litigation against the same party on the same set of facts.

This is especially true when the lawyer's mistakes are compounded. Brook's original lawyer received notice in late July 2012 that Sterling had raised an affirmative defense of FCRA preemption that should have alerted counsel to his oversight. The appropriate course of action would have been for Brook's counsel to file a motion for leave to amend the complaint or a notice that such a motion would be forthcoming. That did not happen. Instead, three months later, Brook himself felt obligated to contact a new lawyer. Concerned about the statute of

5

limitations on Brook's FCRA claims, this lawyer chose to file an entirely new set of claims, rather than enter the existing litigation and without any attempt to unify the suits.

The Court finds Brook's new counsel's rationale understandable, but ultimately unsatisfying. Again, the appropriate course of action would have been for Brook's new attorney to file a motion to amend—asking for expedited review—or, at minimum, to file the new complaint with a contemporaneous motion to consolidate. He chose neither option and did not file a motion to consolidate until one month after Sterling moved to dismiss *Brook II*. In order for the Court to allow the FCRA claim against Sterling to proceed, the Court would have to ratify Brook's attorney's unsupported conclusion that the Court could not rule on a motion to amend in *Brook I* in time to satisfy the statute of limitations. The Court simply cannot do so.

Thus, because *Brook II*'s FCRA claim against Sterling amounts to a classic example of impermissible duplicative litigation, the Court **GRANTS** the Motion to Dismiss as to Sterling. At this stage, of course, Brook may not be without recourse against Sterling, either if the magistrate judge grants his pending Motion to Amend or if the FCRA does not preempt his original state law claims in *Brook I*. These outcomes remain open, and this Order does not suggest or presuppose an outcome on either issue, in particular the Motion to Amend.

As to Opryland, the Court finds the situation differs substantially, given Opryland is not a party to *Brook I*.

A court should not dismiss an action on the basis of duplicative litigation when general principles or rules of procedure did not require the plaintiff to join subsequent defendants to the plaintiff's original suit. *See Twaddle*, 200 F. App'x at 437–38. In *Twaddle*, the Sixth Circuit reversed a district court's decision to deny a motion to consolidate and to grant a motion to dismiss on facts similar to these. There, after the deadline to amend the plaintiffs' complaint in

6

one case expired, they filed a second complaint on the same facts and legal theories, but against different defendants. *Id.* at 438–39. The Sixth Circuit held that the district court's decision to dismiss based on its conclusion that the plaintiffs filed the second suit as an "end run" around court-set deadlines in the first case did not justify dismissal, as the first suit did not preclude further litigation and plaintiffs were not required to bring the second set of claims in the first suit. *Id.* at 437–39. The Sixth Circuit's reasoning hinged in large part on the fact that the plaintiffs brought the second suit against entirely different defendants that no party claimed were indispensible to the first suit. *Id.* at 438–39. While the plaintiffs had the opportunity "to make an untimely motion to amend the complaint" to add the new defendants, they "did not choose that route" and were not required to. *Id.* at 437–38.

Similarly here, neither Sterling nor Opryland argues that Opryland is an indispensible party to *Brook I* or that any Court order in *Brook I* prohibited future litigation against other parties on the same underlying facts.

While Sterling argues that "possible indemnification between the Defendants" would create privity that supports dismissal against Opryland (Doc. No. 7 at 7), the Court finds this argument both speculative and premature at this stage. The cases Sterling cites rely on res judicata, the principle that final judgments may have a preclusive effect on subsequent litigation. *See Sw. Airlines v. Tex. Int'l Airlines*, 546 F.2d 84, 94 (1977). But here, the Court has not made any judgments or findings of fact in *Brook I* that would apply to any FCRA claim against Opryland, much less that would prevent Brook from even pursuing the claims. Similarly, this Court will not preemptively dismiss a case on the basis that one party *might* seek indemnification down the road.

7

Thus, the Court finds the principles of duplicative litigation do not apply to Brook's claims against Opryland and **DENIES** the Motion to Dismiss, as it relates to Opryland.

## III.   MOTION TO CONSOLIDATE

In his Motion to Consolidate, Brook argues that consolidation of *Brook I* and *Brook II* "would serve the interests of judicial economy because [both cases] have common questions of fact" and consolidation would prejudice none of the parties. (Doc. Nos. 23 at 2–3; 21 at 7–9.)

Under Federal Rule of Civil Procedure 42(a), a trial court has the discretion to consolidate two actions that "involve a common question of law or fact," once the court weighs certain factors. Fed. R. Civ. P. 42(a); *Cantrell v. GAF Corp.*, 999 F.2d 1007, 1011 (6th Cir. 1993). The court must consider:

> '[W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.'

*Cantrell*, 999 F.2d at 1011 (quoting *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985)). While judicial economy "is a laudable goal," the court must take care "that consolidation does not result in unavoidable prejudice or unfair advantage." *Id.*

Based on the parties' filings, the Court finds the factors weigh *grosso modo* in favor of consolidation. The parties agree that both cases arise from the same underlying facts. In addition, they appear to agree that the discovery for *Brook I*'s state claims is complete. As for the FCRA claim, Brook states it will not require more discovery. (Doc. No. 27 at 7–8.) If Brook is taken at his word, the Court finds, consolidation would prolong the litigation with no prejudice to Opryland and little, if any, prejudice to Sterling.

Thus, the Court **GRANTS** the Motion to Consolidate.

8

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** the Motion to Dismiss in part and **DENIES** it in part; and **GRANTS** the Motion to Consolidate, as to Brook's remaining claim against Opryland.

It is so ORDERED.

Entered this the ___16___ day of May, 2013.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT